# United States Court of Appeals
## For the First Circuit

No. 10-2327

POWERCOMM, LLC,

Plaintiff, Appellant,

v.

HOLYOKE GAS & ELECTRIC DEPARTMENT;
JAMES M. LAVELLE; BRIAN C. BEAUREGARD;
JEFFREY BROUILLARD; MICHAEL COSTELLO; CHARLES L. MARTEL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before
Boudin, Selya and Dyk,[*]
Circuit Judges.

Geoffrey M. Bohn with whom Robert A. Battey, Bohn & Kouretas, PLC, and Steven S. Albro were on brief for appellant.
John J. Ferriter with whom Ferriter & Ferriter LLC was on brief for appellees.

September 14, 2011

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN, _Circuit Judge_.** PowerComm, LLC--plaintiff in the district court and appellant here--is a small, family-owned firm which, among other things, does construction and related work on electrical utility lines. It is owned by Olga Bruce and her son David Kwasnik. Bruce and her son David are of Puerto Rican extraction and the firm employs other Puerto Rican workers among its diverse workforce. Defendant-appellant Holyoke Gas & Electric Department ("HG&E") operates a municipally-owned utility in Holyoke, Massachusetts.

Starting in 2003, PowerComm was awarded four successive annual contracts to do electrical work, such as line repair, for HG&E. HG&E is directed by three commissioners, appointed by the city's mayor, who have final authority to award such contracts. The final PowerComm contract with HG&E--the 2006 contract--ran from August 27, 2006, to August 25, 2007. On June 21, 2007, a PowerComm employee was severely electrocuted and burned in an electrical accident that occurred while working on an HG&E project.

In response to the accident, James Lavelle, the Senior Manager of HG&E, ordered a work stoppage, or "stand-down," for PowerComm on HG&E projects until investigations into the accident could be completed. The federal Occupational Safety and Health Administration ("OSHA") investigated and ultimately fined PowerComm. HG&E also hired an independent engineering firm to do

its own investigation, which was completed in late September 2007 by which time the 2006 contract had expired.

Contemporaneously, HG&E put the 2007 annual contract out to bid, inviting PowerComm and thirteen other contractors to participate. HG&E's Purchasing Coordinator, Yocelyn Delgado, evaluated the resulting six bids and her spreadsheet analysis concluded that the lowest bid--from Williams Construction ("Willco")--was $70,000 (or about 19 percent) lower than PowerComm's, which was the second lowest. Under state law, the winner must be "the lowest responsible and eligible bidder." Mass. Gen. Laws ch. 30, § 39M(a) (2011).

Delgado recommended to Lavelle that HG&E award the primary contract to Willco and the secondary contract to PowerComm; the secondary contract covers any work that the primary contractor cannot do. About a week after Delgado made her recommendation, which Lavelle endorsed, the commissioners approved the awards as recommended. However, Willco could not post the required surety bond within the statutory time limit, Mass. Gen. Laws ch. 30, § 39M(c) (2011), and eventually the commissioners voted to re-bid the contract.

By this time, PowerComm had already declined to accept the secondary contract. It now refused to participate in the January 2008 re-bidding process, having already given notice of claims against HG&E charging it with discrimination and breach of contract. After an unsuccessful administrative claim on these

charges, PowerComm in July 2009 filed an eight-count complaint against HG&E and individual defendants in federal district court in Massachusetts.[1]

The counts charged that racial discrimination against Puerto Ricans had led to early termination of the 2006 contract, rejection of PowerComm's bid on the 2007 contract and creation of a hostile work environment.  The charges were underpinned by remarks allegedly made by some of the named defendants.  Certain of the comments were general in character (for example, that "Puerto Ricans are taking over HG&E" and "Puerto Ricans destroyed the City of Holyoke.") but one set, discussed below, were directed against David Kwasnik.

Counts I-III of the complaint, based on 42 U.S.C. § 1981, specifically alleged unlawful termination of the final, 2006 PowerComm contract and unlawful failure to award it the new, 2007 one along with creation of the hostile work environment; counts IV and V, under 42 U.S.C. § 1983, alleged equal protection and due process violations; count VI rested on state law, Mass. Gen. Laws ch. 12, § 11I (2011), and concerned two alleged threats against David Kwasnik; count VII, based on 42 U.S.C. § 1985,

---

[1]The named defendants are all HG&E employees. In addition to Lavelle, they are Brian Beauregard, Superintendent of the Electrical Division; Jeffrey Brouillard, Senior Electrical Engineer; Michael Costello, General Foreman for Electric Distribution; and Charles Martel, Facilities and Environmental Health and Safety Coordinator.

charged conspiracy to deprive PowerComm of its civil rights; and count VIII invoked state law prohibiting unfair or deceptive acts and practices, Mass. Gen. Laws ch. 93A, §§ 9, 11 (2011), and related to all of the charged conduct.

HG&E sought summary judgment and obtained dismissal of all counts. PowerComm, LLC v. Holyoke Gas & Elec. Dep't., 746 F. Supp. 2d 325 (D. Mass. 2010). The district court assumed as fact that the alleged racial remarks by HG&E personnel had occurred but --applying the customary summary judgment standard--the court ruled that the 2006 contract had not been terminated early; that no reasonable jury could find that the 2007 contract award was tainted by animus; and that the derogatory remarks, if made, fell short of creating a hostile work environment.[2]

On PowerComm's appeal, our review is de novo both as to conventional issues of law and as to the question, common in summary judgment cases, of whether the disputed evidence gave rise to a genuine issue of material fact that should be submitted to a jury. We take the facts alleged and all reasonable inferences therefrom in favor of the non-moving party--and may affirm only if the record reveals no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. URI Student Senate v. Town of Narragansett, 631 F.3d 1, 7 (1st Cir. 2011).

---

[2]The court also rejected the claims brought under 42 U.S.C. § 1983, neither of which is appealed here, as well as the other less central claims discussed below.

-5-

The appeal primarily turns on whether a reasonable jury could decide in plaintiff's favor. PowerComm does argue that the district court misunderstood the proper legal standard, citing one instance where the court used the word "would" in place of "could." But the court used the correct locution throughout the opinion and the single "would" was a meaningless slip. Anyway, our own review of the state of the evidence is without deference to the district court's evaluation.

PowerComm also alleges as legal error that its first two claims should be judged under mixed-motive analysis, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), because there is "direct evidence" of racial discrimination. Id. at 277 (O'Connor, J., concurring). However, "direct evidence" refers to "a smoking gun" showing that the decision-maker relied upon a protected characteristic in taking an employment action. Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996). PowerComm has adduced no such evidence here.

Claims alleging racial discrimination can, as in this case, be asserted under various overlapping federal and state provisions, varying in their formulation of elements, with further embroidery added by judicial precedent.[3] Much of the parsing

---

[3]E.g. Conward v. Cambridge Sch. Comm., 171 F.3d 12, 18-19 (1st Cir. 1999) (employment discrimination under Title VII and 42 U.S.C. § 1981); T & S Serv. Assocs., Inc. v. Crenson, 666 F.2d 722, 723-24 (1st Cir. 1981) (employment discrimination in public bidding under 42 U.S.C. 1981); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8,

sometimes required can be bypassed here simply by positing that PowerComm would have a case for the jury either if its 2006 contract were arguably terminated early because of racial bias or if it could somehow connect the selection of another contractor in 2007 to any such animus.

On neither branch of these two theories was there sufficient evidence to create a genuine issue and send the case to the jury. PowerComm did an adequate job of creating a jury issue on the question of whether some HG&E employees displayed racial animus over the life of the PowerComm contracts. We assume too that a jury could find that HG&E in some corporate sense was arguably aware, from advertising and otherwise, that the family that owned PowerComm was of Puerto Rican extraction even though many of its employees were not Puerto Rican.

But no evidence indicates that the 2006 contract was terminated early or that the stand-down after the accident--which PowerComm equates with termination--was initiated, conducted or prolonged based on racial animus. The contract ran out while HG&E's consultant was completing its investigation after an accident requiring several weeks of hospitalization for the injured

---

10 (1st Cir. 1999) (hostile work environment claim under 42 U.S.C. § 1981), cert denied, 528 U.S. 1105 (2000); Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 335 (Mass. 1996) (Mass. Gen. Laws ch. 12, § 11I); Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996) (42 U.S.C. § 1985(3)); Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510 (1st Cir. 1989) (Mass. Gen. Laws ch. 93A).

worker.[4]  Lavelle, who ordered the stand-down, is not alleged to have made derogatory remarks or to have been aware of them.

PowerComm suggests that there was something suspicious about the hiring of an independent engineering consultant to evaluate the situation instead of having government regulators and HG&E do their own assessment, as was previously done.  In fact, the record reveals that, given the serious injury, HG&E was concerned about litigation and also that HG&E had employees conducting similar work, making even more important an explanation and remedy.  PowerComm has not connected the stand-down with racial animus.

As for the bidding on the 2007 contract, HG&E's evidence was that Willco's bid was significantly lower and, in addition to its obligations under state law, Holyoke citizens would benefit from using the lowest cost qualified provider of services.  The recommendation was made by Delgado, endorsed by Lavelle, and approved by the commissioners; again, nothing connects any of them with racial animus.  PowerComm has not demonstrated that the decision was affected by input from Brouillard and Costello, both of whom are alleged to have made remarks demonstrating discriminatory animus.

---

[4]PowerComm contends that the contract was terminated prematurely because the contract contained an option for an additional year of work.  While the option provision does not clearly specify which party has the right to extend the contract, neither party alleges that either side took any steps to exercise the option.

-8-

PowerComm suggests that HG&E acted in a suspect manner because, when Willco could not post the required bond in time, HG&E initially agreed that it could instead secure an irrevocable letter of credit. This, the Attorney General's office ultimately advised, was not permissible and--as a result--the contract was rebid. But this ruling replaced earlier contrary advice from that office and there is nothing suspicious about taking reasonable steps to secure a lower price. There is no evidence that HG&E acted in bad faith or out of discriminatory animus in attempting to assist Willco in obtaining the required bond or exploring the possibility of substituting a letter of credit, even though neither initiative was ultimately successful.[5]

In the meantime--while Willco's bond status was being resolved--PowerComm had declined to become the secondary supplier on the contract. PowerComm then resisted entreaties from HG&E to bid in the reopened bidding process. As with the alleged termination of the 2006 contract, nothing beyond supposition and innuendo connects PowerComm's failure to receive the 2007 contract with racial animus.

---

[5]Similarly, while the bond was required to be posted within a specified period, HG&E employees have stated without contradiction that they believed--based on training conducted by the state Attorney General's office--that it was acceptable to provide Willco this additional time in order to finalize the contract and achieve substantial savings for HG&E's ratepayers.

Finally, PowerComm alleges that it was subjected to a hostile work environment based on disparaging comments made by HG&E employees or officials about Puerto Ricans. It is common ground that hostile work environment claims, charging violation of § 1981 or Title VII, can be based on racial bias. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996). To succeed, a claimant must establish harassment "sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment." Douglas v. J.C. Penney Co., 474 F.3d 10, 15 (1st Cir. 2007).

Although many cases involve egregious conduct, e.g., Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 59-60 (1986), the Supreme Court has taken "a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Without describing the offensive remarks in detail, they might well be sufficient in some circumstances to make out a case for a jury.

Here, the only PowerComm employee who might plausibly claim to have been subjected to an abusive work environment is PowerComm employee and part-owner David Kwasnik. PowerComm employee Altagege Perez submitted a brief affidavit alleging that he heard Costello and Brouillard make disparaging comments about Puerto Ricans; this affidavit falls far short of adequate support

-10-

for a hostile work environment claim by Perez but it slightly bolsters David Kwasnik's more focused account.

As to David Kwasnik, PowerComm employee Michael Sharp alleged that Costello had expressed dislike of Puerto Ricans and told him to make sure that David Kwasnik stayed away from HG&E work sites. Kwasnik, saying that another PowerComm employee had confirmed this to be Costello's view, alleged that such threats led him to stay away from the HG&E site. The suggestion is that this caused him to be deprived of earnings from working on HG&E projects.

We will assume that the evidence was sufficient so that David Kwasnik might show that the racially-based threats subjected him to an abusive work environment and to both psychological and economic harm. However, David Kwasnik is not a named plaintiff and cannot recover for harm to himself in a case to which he is not a party. Indeed, as he himself had no actual or potential contractual relationship with HG&E, his ability to bring a section 1981 claim is highly doubtful in this circuit. Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999), cert denied, 528 U.S. 1105 (2000). Compare Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 n.3. (2006)(reserving the question of suit by a non-contracting party).

PowerComm, however, is a named plaintiff and has the requisite contractual relationship with HG&E on which to ground a

claim under section 1981. Conceivably, a company could be injured by a hostile work environment inflicted on its employees because this might in some cases be shown to impair its own ability to do its contractual work. We assumed in Danco that this might be a basis for liability but did not have to resolve the question there. Danco, 178 F.3d at 14, 16. Nor do we have to resolve it here.

In this case PowerComm's only serious assertions of harm to it rest on the alleged termination of its 2006 contract and failure to win the 2007 contract. Even if David Kwasnik was driven from the site and lost earnings, nothing suggests that the total work available for PowerComm was diminished. Its own economic damage testimony, tendered at the summary judgment stage, was devoted to loss of provider status and other alleged harms, but did not assert lost revenue based on David Kwasnik's absence.

PowerComm's remaining claims do not require separate discussion. PowerComm advanced a conspiracy charge under 42 U.S.C. § 1985 and a claim that HG&E engaged in unfair or deceptive acts or practices under Mass. Gen. Laws ch. 93A (2011), but both are presented in wholly conclusory terms on appeal and are therefore forfeited. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert denied, 494 U.S. 1082 (1990).

PowerComm's charge of improper threats under Mass. Gen. Laws ch. 12, § 11I (2011) never identified the legal rights against which the threats were directed. PowerComm cites Lecrenski Bros.

-12-

<u>Inc.</u> v. <u>Johnson</u>, 312 F. Supp. 2d 117 (D. Mass. 2004), for the proposition that it need not identify such rights in its complaint, <u>id.</u> at 122-23; but PowerComm has now gone through summary judgment and briefing on appeal and has still not identified the supposed right or offered any other explanation of how this claim adds anything significant to its battery of charges.

PowerComm also alleges that it was denied adequate discovery but both claims of error are inadequately developed in the opening brief on appeal and so are not properly preserved for review. <u>KPS & Assoc., Inc.</u> v. <u>Designs by FMC, Inc.</u>, 318 F.3d 1, 25 (1st Cir. 2003). If they were considered, the district judge's rulings would be reviewed for abuse of discretion, <u>Boston Gas Co.</u> v. <u>Century Indem. Co.</u>, 529 F.3d 8, 17-18 (1st Cir. 2008), a discretion rarely overturned in matters of discovery.

<u>Affirmed</u>.