**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 7, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALLSTATE SWEEPING, LLC, a
Colorado limited liability company,

       Plaintiff - Appellee,

   v.

CALVIN BLACK,

       Defendant - Appellant,

and

CITY AND COUNTY OF DENVER, a
municipal corporation; APRIL
HENDERSON; STEVE DRAPER;
RUTH RODRIGUEZ, individually,

       Defendants.

No. 12-1027

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:10-CV-00290-RBJ-MJW)**

---

Cathy Havener Greer (William T. O'Connell, III and L. Michael Brooks, Jr., with
her on the briefs), Wells, Anderson & Race, LLC, Denver, Colorado, for
Defendant - Appellant.

Anne T. Sulton, Sulton Law Offices, Milwaukee, Wisconsin, for Plaintiff -
Appellee.

---

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

Plaintiff Allstate Sweeping, LLC (Allstate) is owned and operated by two white women: Martha Krueger and Barbara Hollis. In January 2006 it began performing pressure-washing services at Denver International Airport (DIA) under a contract with the City and County of Denver (Denver). Although the contract term was through July 2008, it was terminated by Denver on July 1, 2007. Defendant Calvin Black, a contract-compliance technician at DIA, was assigned to monitor Allstate's contract. Black is an African-American male.

Allstate claims that it was subjected to gender- and race-based discrimination and to retaliation for its complaints of discrimination. It filed suit under 42 U.S.C. § 1983 in the United States District Court for the District of Colorado against Denver and four DIA employees, including Black, claiming violations of 42 U.S.C. § 1981, 42 U.S.C. § 2000d (Title VI) (alleged against Denver only), and the Equal Protection Clause of the Fourteenth Amendment. The district court granted summary judgment to all defendants except Black. It held that there were genuine issues of fact regarding whether Black was motivated by racial and gender bias and whether Black "created a hostile work environment vis-à-vis the plaintiff by acting in such a way as to make plaintiff's contract unprofitable and its owners miserable." Aplt. App., Vol. V at 1333. It did not address Allstate's retaliation claim. Black appeals the denial of his motion for

summary judgment, contending that he is entitled to qualified immunity and that we have jurisdiction to review the denial under the collateral-order doctrine.

We hold that we lack jurisdiction to review the district court's determinations that there was sufficient evidence that Black was motivated by racial and gender bias and that his actions made Allstate's contract unprofitable, because such sufficiency determinations are not reviewable under the collateral-order doctrine. We do, however, have jurisdiction to review the legal sufficiency of the claim that Black made Allstate's "owners miserable" and to review the sufficiency of the evidence of the retaliation claim (which the district court did not consider), and we reverse the denial of summary judgment on those claims.

## I.    BACKGROUND

In support of its claims that Black made it lose money under its contract, Allstate produced evidence that Black had directed Allstate to undertake tasks not included in its contract and forced Allstate employees to sit idle for hours, waiting to work in a particular area even though they could have performed tasks elsewhere. To support its hostile-work-environment claim, Allstate offered evidence that Black was unpleasant to work for; was "rude all the time," *id.,* Vol. I at 92, "pushy," and "bossy" to Allstate employees, *id.*, Vol. V at 1210; "babys[at]" them "24/7," *id.* at 1232; and "nitpick[ed]" whatever tasks they were doing, *id.*, Vol. I at 106. According to Allstate witnesses, on several occasions Black screamed at Allstate employees and called them "stupid," *id.* at 91; he told

some Allstate employees, who were white women, that because they were "a little overweight" they probably "couldn't move as fast as a man could," i*d.* at 93; and he spoke to Allstate's owners in a "demeaning" way, as if they were "child[ren]" rather than "equal adults," *id.* at 104, even acting at meetings as if Krueger and Hollis were not in the room. Because of Black's behavior, Allstate employees were returning from work crying; some quit.

To show that Black's conduct was motivated by discriminatory bias, Allstate pointed to evidence of race- and gender-based comments by Black: Black told Krueger that Allstate "probably didn't know what [it] was doing" because it was owned by women. *Id.*, Vol. I at 93. After Allstate's contract with DIA was terminated, Black told an employee of another contractor several times that one of Allstate's owners was a "[c]razy bitch." *Id.*, Vol. V at 1209. And although there is no evidence that Black made racially disparaging remarks in front of Allstate's owners, an Allstate employee testified that when he asked Black why he would award a contract to an African-American-owned company "that didn't bid it to the specs," Black responded that he was "just trying to help [his] bros." *Id.* at 1208.

Allstate also alleges retaliation for its complaints of bias. It complained in several ways. Krueger contacted the mayor's office, DIA employees, and the Denver Civil Rights Division, and also complained to Black directly. At a meeting on May 16, 2007, Krueger informed April Henderson, a contract-

compliance supervisor at DIA, that Allstate had "to be treated better" or she would "ask to be taken out of the contract." *Id.*, Vol. IV at 983. On May 23 Black and another DIA employee conducted a surprise inspection of Allstate's equipment and told Allstate to fix and replace some of it. In a letter sent to Henderson the following day, Hollis and Krueger again accused DIA employees of discriminating against their company. They said that if they were forced to purchase more equipment, Allstate would have to re-bid the contract. A week later, Denver informed Allstate that it was terminating Allstate's contract "for [the] convenience of the city." *Id.* at 853 (capitalization omitted). The contract was officially terminated on July 1. After the termination DIA officials stated in internal documents and in at least one email to the City Council that Allstate had defaulted on its contract for lack of proper equipment and performance. And Allstate allegedly was not paid $4,000 for work it had performed.

Allstate filed this lawsuit against Denver and four DIA employees, including Black. Against Black, Allstate alleged discrimination (based on race) and retaliation in violation of 42 U.S.C. § 1981, and discrimination (based on race and sex) and retaliation in violation of the Equal Protection Clause. The district court granted the motions for summary judgment by all defendants except Black. Explaining its denial of Black's motion, the court wrote:

> The Court finds that plaintiffs have come forward with evidence
> sufficient to establish the existence of a genuine dispute of material
> fact concerning whether (1) whether [sic] Mr. Black created a hostile

work environment vis-à-vis the plaintiff by acting in such a way as to make plaintiff's contract unprofitable and its owners miserable, and (2) whether [sic] he was motivated by bias in favor of African-Americans and African-American owned businesses and/or prejudice against white females and a white female owned business. . . .

With respect to the second prong of the qualified immunity test, the Court finds that it is clear to any reasonable person that discrimination by a City employee against a company working under a contract with the City on the basis of race or gender is unlawful.

*Id.*, Vol. V at 1333–34.

Black appeals, arguing: (1) there was no evidence that he was motivated by racial or gender animus; (2) he had no authority to take the alleged discriminatory actions; (3) the law was not clearly established that Allstate could bring a discrimination claim based on the hostile work environment suffered by its owners and employees; and (4) he had no authority to take the alleged retaliatory actions.[1]

## II. DISCUSSION

### A. 42 U.S.C. § 1981 and the Equal Protection Clause

Allstate's discrimination claims under § 1981 and the Equal Protection Clause have similar elements. "Section 1981 forbids all intentional racial discrimination in the making and enforcement of private or public contracts." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004). *See* 42 U.S.C. § 1981(a). It provides:

---

[1] This appeal concerns only claims against Black in his individual capacity. Official-capacity claims are really claims against Denver, *see Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006), and the district court dismissed those.

-6-

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

*Id.* § 1981(a)–(c).  Independent contractors can state a discrimination claim under § 1981.  *See Bolden v. City of Topeka*, 441 F.3d 1129, 1134–37 (10th Cir. 2006) (ruling, however, that claim against municipality for violation of § 1981 must be brought under § 1983); *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009) ("We . . . agree with the decisions that hold that an independent contractor may bring a cause of action under section 1981 for discrimination occurring within the scope of the independent contractor relationship."); *Wortham v. Am. Family Ins. Group*, 385 F.3d 1139, 1141 (8th Cir. 2004) ("[The plaintiff's] status as an independent contractor . . . does not preclude her from pursuing a claim under section 1981."); *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 14 (1st Cir. 1999) (independent contractors may sue under § 1981 on a hostile-work-

environment theory because the statute "does not limit itself, or even refer, to employment contracts but embraces all contracts"). To prove a claim under § 1981, an independent contractor must prove that because of racial animus it was denied "benefits, privileges, terms, [or] conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Wortham*, 385 F.3d at 1141; *Brown*, 581 F.3d at 181–82 (elements of § 1981 claim "are generally identical" to those for a Title VII claim). Also, we can assume, without deciding, that an independent contractor can state a claim under § 1981 for retaliation against it for protesting a violation of that statute. *See Webster v. Fulton County,* 283 F.3d 1254, 1257 (11th Cir. 2002) (independent contractor can state a claim for violation of § 1981 when it is not awarded a contract in retaliation for filing a § 1981 discrimination lawsuit); *see also Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997–98 (10th Cir. 2011) (employee can bring § 1981 retaliation claim).

As for the Equal Protection Clause, it "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting the Clause). The Clause's protections extend to disparate treatment based on race and gender. *See id.* at 440–41. Black does not dispute that an independent contractor can assert a claim for such discrimination against a municipal employee. *See Radentz v. Marion County*, 640 F.3d 754 (7th Cir. 2011). Allstate

also brought a retaliation claim under § 1983 asserting a denial of equal protection, but this court does not recognize such a claim. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006), *overruled on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

One special type of discrimination claim is a claim that the defendant created a hostile work environment. We will assume, without deciding, that such a claim can be brought as a § 1983 claim based on both § 1981 and the Equal Protection Clause. The district court said that there was "a genuine dispute of material fact concerning whether . . . Black created a hostile work environment vis-à-vis the plaintiff by acting in such a way as to make plaintiff's contract unprofitable and its owners miserable." Aplt. App., Vol. V at 1333. We are puzzled, however, by the characterization as a hostile-work-environment claim of the claim that Black took actions to make Allstate's contract unprofitable. That appears to us to be a plain vanilla discrimination claim. We therefore will recharacterize that claim as a simple discrimination claim and characterize only the making-the-owners-miserable claim as a hostile-work-environment claim.

### B.    Qualified Immunity and Appellate Jurisdiction

Black contends that the district court should have granted him summary judgment on Allstate's claims of discrimination and retaliation because he was entitled to qualified immunity. Under the qualified-immunity doctrine a public officer or employee is subject to liability only for violating a federal

constitutional or statutory right that was clearly established at the time of the violation. A right is clearly established if "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (brackets and internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Qualified immunity not only protects public employees from liability, it also protects them from the burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To effectuate this protection, the ordinary requirements for appellate jurisdiction are relaxed in the qualified-immunity context. "Under 28 U.S.C. § 1291 an appellate court can review only a final decision, generally one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Rieck v. Jensen*, 651 F.3d 1188, 1190 (10th Cir. 2011) (ellipsis and internal quotation marks omitted). In most circumstances the denial of summary judgment is not appealable as a final decision, because it "leaves much (often everything) to be decided." *Id.* But the denial of a motion for summary judgment based on a claim of qualified immunity may be a final decision under the collateral-order doctrine. According to that doctrine an order entered before final judgment is a final decision if it (1) "[is] effectively unreviewable on appeal from a final judgment," (2) "conclusively determine[s] the disputed question," and (3) "resolve[s] an important issue completely separate

from the merits of the action." *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (internal quotation marks omitted). The denial of a defendant's motion for summary judgment on qualified-immunity grounds will often satisfy those requirements because (1) review after final judgment "would come too late to vindicate one important purpose of qualified immunity—namely, protecting public officials . . . from standing trial," (2) the question of immunity from suit is conclusively settled by allowing the case to proceed, and (3) the issue is likely to be "completely separate from the merits of the action." *Id.* at 312 (internal quotation marks omitted). *See Rieck*, 651 F.3d at 1190–91. To be "completely separate" from the merits, however, the qualified-immunity issue raised on appeal must be an "abstract *legal* question[]," such as (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) "whether that law was clearly established at the time of the alleged violation." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotation marks omitted). In contrast, "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial" is not an abstract legal question, and a court of appeals lacks jurisdiction to review a district court's ruling on such a matter. *Johnson*, 515 U.S. at 320.

## C. Issues Over Which We Lack Jurisdiction

### 1. Insufficient Evidence of Racial or Gender Animus

Black argues that he was entitled to summary judgment on the discrimination claims against him because there was insufficient evidence that he harbored an animus against Allstate based on the race or gender of its owners. We acknowledge that the evidence is thin; but we lack jurisdiction to afford him relief.

Black's argument presents no abstract issue of law. Rather, he asks this court to determine "a question of evidence sufficiency, i.e., which facts [Allstate] may, or may not, be able to prove at trial." *Rieck*, 651 F.3d at 1191 (internal quotation marks omitted). Whether the district court correctly determined that there is sufficient evidence of animus to create a genuine issue of fact is not one of the "abstract *legal* questions" we may normally decide on appeal from a district court's denial of a qualified-immunity motion for summary judgment. *Lewis*, 604 F.3d at 1225 (internal quotation marks omitted).

### 2. Insufficient Evidence of Actions Making the Contract Unprofitable

Black also argues that he was entitled to summary judgment on Allstate's discrimination claim because he did not have the authority to take the alleged discriminatory actions against Allstate. The district court, however, ruled that there was "a genuine dispute of material fact concerning whether . . . Mr. Black

-12-

created a hostile work environment vis-à-vis the plaintiff by acting in such a way as to make plaintiff's contract unprofitable . . . ." Aplt. App., Vol. V at 1333. In other words, the district court found that there was sufficient evidence for a jury to find that Black took discriminatory actions against Allstate. Again, we cannot review the district court's ruling on whether there was a genuine issue of fact. Black is not raising an abstract issue of law, such as whether government contractors have a clearly established right, under § 1981 and the Equal Protection Clause, not to lose money under their contracts because of discrimination based on the race or gender of their owners. As with Black's first issue, we lack jurisdiction to consider this argument.

### D. Hostile Work Environment

We do, however, have jurisdiction to review Black's challenge to Allstate's discrimination claim based on a typical allegation of a hostile work environment—Black's allegedly making Allstate's owners miserable. As to that claim, Black raises an abstract legal question: whether the law was clearly established that § 1981 or the Equal Protection Clause bars discrimination against a contractor by making its owners miserable. We agree with Black that the validity of such a discrimination claim was not clearly established at the time of Black's actions.

As stated previously, we will assume, without deciding, that hostile-work-environment claims are proper under both § 1981 and the Equal Protection

-13-

Clause.  But Allstate cites to no cases, nor can we find any, holding that the harassment endured by the principals of an artificial entity can give rise to a racial- or gender-discrimination claim on behalf of the entity itself, absent independent injury to the entity.  Indeed, it is not clear to us that an artificial entity could ever prevail on a hostile-work-environment claim.  Such a claim has a subjective, as well as an objective, component; there must be proof that "the plaintiff was offended by the work environment."  *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted).  Being *offended* presupposes feelings or thoughts that an artificial entity (as opposed to its employees or owners) cannot experience.

Perhaps Allstate had a right not to be injured because of hostility directed at its owners or employees—for example, by losing money because its employees had lower morale or quit.  *See PowerComm, LLC v. Holyoke Gas & Elec. Dept.*, 657 F.3d 31, 37 (1st Cir. 2011).  But Allstate has made no such claim.  Black was therefore entitled to summary judgment on Allstate's hostile-work-environment claim.

## E.    Retaliation

Finally, Black argues that he was entitled to summary judgment on Allstate's retaliation claim against him.  His argument is simply that he did not have authority to take the retaliatory actions alleged in Allstate's complaint.

The posture of this argument is different from that of the issues over which we lack jurisdiction—discriminatory animus and authority to take discriminatory actions. On this issue we have no ruling by the district court that the evidence was sufficient to create a genuine issue of fact. Indeed, the district-court opinion does not address the retaliation claim.

In this circumstance it is left to us to determine whether there is sufficient evidence in this record to create genuine issues of fact upon which a retaliation claim can be founded. As we said recently, when the district court "fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record *de novo* to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make." *Lewis*, 604 F.3d at 1225.

Our discussion can be brief. On appeal Allstate argues that Black retaliated against it both during the contract and after it was terminated by manipulating Allstate's work schedule, creating a hostile work environment, and spreading false reports that Allstate had defaulted on its contract and gone out of business. We have reviewed the portions of the record cited by Allstate and fail to find any evidence of retaliation. There is no evidence that any action by Black was in response to a complaint by Allstate of racial or gender discrimination (or, in most cases, was even after such a complaint); and some of the alleged retaliatory actions would not support a retaliation claim because they were not severe enough

to deter a reasonable person from claiming discrimination. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (alleged retaliatory actions must be sufficiently adverse that they may well "have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'" (internal quotation marks omitted)).

Moreover, Allstate did not preserve in district court the arguments raised in its appellate brief. The § 1981 retaliation claim in the Amended Complaint states only:

> The individual Defendants, acting under the color of law, personally and individually participated in intentionally discriminating against Allstate on the basis of the race of Allstate's owners/operators, and/or in retaliation for Allstate complaining about racial discrimination, when they took materially adverse actions against Allstate, including but not limited to the following actions:
> a) falsely reporting, in and after May 2008, that Allstate defaulted on its contract; and
> b) denying, in 2008 and 2009, Allstate's repeated requests for payment of approximately $4,000 due it for services rendered.

Aplt. App., Vol. I at 41 (§ 1981 retaliation claim). Black's motion for summary judgment points to evidence that he did not report that Allstate defaulted on the contract, did not deny the requests for $4,000, and did not have authority to order Allstate to purchase new equipment or terminate its contract. Yet Allstate's response to the summary-judgment motion does not attempt to dispute that evidence, or even refer to it. The response (which addresses the summary-judgment motions of all the defendants) mentions the retaliation claims collectively; but even its "Statement of Additional Disputed Facts," *id.*, Vol. IV at

796 (capitalization omitted), does not allege any retaliatory action by Black. Because the assertions of retaliatory action by Black that are made in Allstate's appellate briefs were not made below, it cannot rely on them in this court. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."). We conclude that Black is entitled to qualified immunity on the retaliation claim.

## III.   CONCLUSION

We REVERSE and REMAND for entry of summary judgment in favor of Black on two of Allstate's claims: (1) that Black created a hostile work environment for Allstate, and (2) that Black retaliated against Allstate. We lack jurisdiction to consider Black's other arguments, and so DISMISS the remainder of the appeal. We REMAND to the district court for further proceedings on Allstate's claim that Black discriminated against it by taking actions (motivated by racial and gender animus) that caused it to lose money under the contract.