**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MARY EASTER, as special administrator
for the estate of Billy Patrick, deceased,

     Plaintiff - Appellee,

v.

JARED CRAMER, in his individual
capacity,

     Defendant - Appellant,

and

OKLAHOMA DEPARTMENT OF
WILDLIFE CONSERVATION,

     Defendant.

No. 17-7069
(D.C. No. 6:16-CV-00168-KEW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **CARSON**, Circuit Judges.
_____

After a brief scuffle during the course of an arrest, Game Warden Jared

Cramer ("Cramer") and the decedent Billy Patrick ("Patrick") rolled down a hill into

an Oklahoma pond. Patrick landed on Cramer and pushed him under water at least

once. Cramer, claiming he feared being drowned, pulled his service weapon and shot

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Patrick dead.  Today, in this qualified immunity case, we decide whether, in doing so, Cramer violated Patrick's clearly established constitutional rights.

I.

On April 26, 2015, at around 8:30 a.m., Patrick, Carl Locke ("Locke"), and Lyndi King ("King") went fishing at a pond in rural Adair County, Oklahoma.  They fished on the east side of the pond by their vehicle.  Patrick and King moved to the northwest corner of the pond while Locke remained close to the vehicle.

Approximately one hour after they arrived, Oklahoma State Game Warden Cody Youngblood ("Youngblood") appeared at the pond near Patrick and King. Youngblood wrote Patrick a ticket for fishing without a license.  Afterward, Patrick walked over to Locke and told him what had happened.

The defendant-appellant Game Warden Jared Cramer heard on his radio that Youngblood had contacted at least two individuals for whom the State of Arkansas had issued arrest warrants.  Cramer did not know the basis for the warrants.  Cramer went to Youngblood's location to assist him because the radio traffic indicated Youngblood intended to take the subjects into custody.

As Cramer approached the pond from the west, he pulled in next to Youngblood on the passenger side of Youngblood's truck.  After exiting his vehicle, Cramer asked Youngblood which individuals had a warrant.  Youngblood identified Patrick, who Cramer noted was pacing.

After speaking with Youngblood, Cramer drove to the other side of the pond where Patrick and Locke were located.  When he arrived, Cramer asked Patrick to put

2

his hands on the bed of Patrick's truck and asked Patrick if he had any weapons. Cramer then asked Patrick to place his hands behind his back and point his thumbs up. Immediately after receiving that instruction, Patrick ran to Cramer's right towards the slope down to the pond. Cramer pursued Patrick and tackled him. Patrick and Cramer then rolled into the pond.

As the altercation continued in the pond, Cramer shot Patrick twice, killing him. Although some testimony regarding the altercation in the pond is inconsistent, the undisputed facts establish that when Cramer and Patrick landed in the pond, Patrick rested on top of Cramer and Cramer was under water. Then as the altercation persisted, Patrick pushed Cramer under water at least one time. At some point, Patrick rose up out of the water, and Cramer shot him. Little—if any—space separated the two men at the time of the shooting.

The plaintiff-appellee Mary Easter, as Special Administrator for Patrick's Estate ("the Estate"), filed this civil action under 42 U.S.C. § 1983, alleging that Cramer violated Patrick's Fourth Amendment right to be free from excessive force.[1] Cramer filed a motion asserting that he is entitled to qualified immunity because no violation of the Fourth Amendment occurred and the law was not clearly established that his actions violated the Constitution. The district court denied qualified immunity, stating that the facts in this case were "simply in dispute as to the level of

---

[1] The Estate also sued the Oklahoma Department of Wildlife Conservation under the Oklahoma Governmental Tort Claims Act. That claim is not at issue on appeal.

3

threat under which Cramer was under when an unarmed Patrick tried to elude him during the attempted arrest." The district court determined that a genuine dispute of material fact existed as to whether Patrick attempted to drown Cramer at the time Cramer shot him and whether an objectively reasonable officer would have determined that deadly force was appropriate under the circumstances. The district court also determined that the law was clearly established at the time of this incident that deadly force is only justified when a suspect poses a significant threat of death or serious physical injury to the officer or others. The district court stated that a dispute remained as to whether Cramer was under such a threat at the time of the shooting.

## II.

The Court has jurisdiction under 28 U.S.C. § 1291 to review "all final decisions of the district courts of the United States." Ordinarily, "[o]rders denying summary judgment are . . . not appealable final orders for purposes of 28 U.S.C. § 1291." Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013). The "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Thus, the Court may, on interlocutory appeal, review: "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013) (quoting Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1267 (10th Cir. 2013)).

4

At the same time, we cannot review a denial of qualified immunity in the summary judgment context insofar as the "order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 320 (1995). "[I]f the defendant . . . dispute[s] the plaintiff's allegations[,] the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." Farmer v. Perrill, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002) (internal quotation marks omitted). Ordinarily, "[t]he district court's factual findings and reasonable assumptions comprise the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." Cox v. Glanz, 800 F.3d 1231, 1242 (10th Cir. 2015) (internal quotation marks omitted). When the district court "concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we usually must take them as true—and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law." Id. (quoting Lewis v. Tripp, 604 F.3d 1221, 1225 (10th Cir.2010)).

Nevertheless, we may independently review the factual record on interlocutory appeal under several circumstances. Those circumstances include: (1) when the district court does not state the facts that it found when it denied summary judgment for a purely legal reason, Johnson, 515 U.S. at 319; and (2) when the facts found by the district court are "blatantly contradicted by the record," see Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, if "the district court commits *legal* error en route to a *factual* determination, that determination is thereby deprived of any special

solicitude it might otherwise be owed on appeal." Pahls v. Thomas, 718 F.3d 1210, 1232 (10th Cir. 2013).

III.

A.

The district court did not make a factual finding as to whether Cramer's shooting of Patrick could be justified based upon Patrick being a threat to third-parties other than Cramer, such as Youngblood, Locke, and King. Cramer contends that the district court's omission of such a fact causes its factual findings to be blatantly contradicted by the record. Stated differently, he asserts that the district court should have found a fact, not that the record blatantly contradicts a fact found by the district court.

True, a district court's assessment of the facts may be "blatantly contradicted" by the record. Walton v. Powell, 821 F.3d 1204, 1208 (10th Cir. 2016). In such a case, we must "sort out the dispute by asking whether there is a 'blatant' contradiction and, if so, what a reasonable jury could find given the record at hand." Id. (citing Scott, 550 U.S. at 380).

But Appellant's argument fails. In viewing the record in favor of Appellee, and drawing all inferences in her favor, the Court is satisfied that the record does not compel a finding that Patrick was a danger to the other individuals present at the time Cramer shot him. When Cramer attempted to arrest Patrick, Patrick was speaking

6

with Locke, and King and Youngblood were on the other side of the pond.[2]  We see no evidence that Patrick was at any time aggressive towards Locke, King, or Youngblood, or moved aggressively towards them, or that those individuals were otherwise in danger.  Under these circumstances, the "blatant contradiction" exception is not implicated.

B.

Having rejected Cramer's argument that the defense of others justified his shooting of Patrick, we must now determine if a reasonable officer, under the facts presented in this case, would have understood that the use of deadly force violated the decedent's clearly established rights.

"Under the qualified-immunity doctrine a public officer or employee is subject to liability only for violating a federal constitutional or statutory right that was clearly established at the time of the violation."  Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1266 (10th Cir. 2013).  Qualified immunity protects officers from liability unless: (1) "the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right"; and (2) "the right at issue was clearly established at the time of defendant's alleged misconduct."  See Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009) (citations and internal quotation marks omitted).  The courts of appeal may reverse a district court's denial of summary judgment when the plaintiff

---

[2] Youngblood and King drove back towards Patrick during the altercation.

7

fails to satisfy either prong and may address the prongs in any order. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018).

We address the second prong—that is, whether the allegedly violated right was clearly established at the time of the shooting. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & Cty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). The plaintiff bears the burden of directing the Court to authority that clearly establishes the right that was arguably violated. See Washington v. Unified Gov't of Wyandotte Cty., 847 F.3d 1192, 1201 n.3 (10th Cir. 2017).

The Supreme Court's jurisprudence "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Kisela, 138 S. Ct. at 1152 (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). Courts should not "define clearly established law at a high level of generality." Id. (quoting City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1776 (2015)). "[A] right is clearly established when a precedent involves materially similar conduct or applies with obvious

8

clarity to the conduct at issue." Apodaca, 864 F.3d at 1076 (internal quotation marks omitted and emphasis removed).

"[E]xcessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case," and "there will almost never be a previously published opinion involving exactly the same circumstances." Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal quotation marks omitted). Thus, when addressing claims of excessive force, we apply a sliding scale in which "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Id. (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004)).

In general, when we determine whether an officer's use of force was reasonable, we examine "the facts and circumstances of . . . [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Deadly "force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985).

When assessing whether the use of deadly force was justified during an altercation, we consider several non-exclusive factors, including:

9

"(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with . . . [a] weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97. Thus, "[t]he reasonableness of a particular use of force" is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (internal quotation marks omitted).

In the factual context of this case, we conclude that the right asserted by Appellee was not clearly established. Initially, Appellee claims that the right in this case was clearly established because Cramer lacked probable cause to believe that Patrick posed an immediate threat to the safety of the officers or others. That high-level principle is too general in light of the facts of this case.

Appellee also argues that the right is clearly established under our decision in Carr v. Castle, 337 F.3d 1221 (10th Cir. 2003), which she contends addresses the use of deadly force under materially similar circumstances. Appellee's reliance on Carr fails as well.

In that case, two officers shot the decedent eleven times in the back. The fatal shot travelled through his buttocks, stomach and lungs, and into his heart's

10

pericardial sac. The Court affirmed the denial of qualified immunity when—although the decedent had previously assaulted the officers and fled, and, once cornered against a fence, had thrown a four-inch piece of concrete at the officers—the decedent, at the time of the shooting, was unarmed, was not advancing on the officers, and had his head near the ground with his buttocks slightly elevated. See id. at 1224-28 & n.6.

In Carr, the facts most favorable to the plaintiff showed that the officers shot the decedent in the back when his head was near the ground. Moreover, the decedent was unarmed and not dangerous at the time of the shooting. In contrast, here, the district court did not find any evidence that Cramer shot Patrick in the back or that Patrick was in a posture suggesting he was no longer a threat to Cramer. Instead, even taking the facts in the light most favorable to Plaintiff, Patrick was on one knee; was only partially turned; and, when Cramer shot him, remained in a position to resume what a reasonable officer could have believed was an attempt to drown Cramer.

The undisputed facts identified by the district court do not permit an inference that at the time of the shooting Patrick no longer presented a threat to Cramer, whom he had seconds before pushed under water.[3] To the contrary, the undisputed record

---

[3] In her briefing, Appellee suggests that Lindi King's testimony established that Patrick and Cramer were not near each other at the time of the shooting (thus suggesting that Cramer could not reasonably have believed he was in danger). At oral argument, however, Appellee conceded that King did not quantify the distance between Patrick and Cramer at the time of the shooting. Indeed, King admitted that she could not see Patrick at the time of the shooting and she repeatedly deferred to

establishes that as he attempted to evade Cramer, Patrick landed on top of Cramer as they entered the pond and then shoved Cramer under the water during the course of the altercation. Thus, although Patrick was unarmed, Cramer remained in a vulnerable position, and a reasonable officer would have reason to believe that Patrick might use the water to drown him if the altercation continued.[4]

Because of the numerous factual differences between Carr and this case, Carr did not place Cramer on notice that the use of deadly force under the circumstances presented here would result in the violation of a clearly established right.

Accordingly, we reverse and remand for entry of summary judgment in favor of Cramer.

REVERSED AND REMANDED.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

Locke—who she described as "the one that saw more than [her]." Locke testified at his deposition that Patrick was only inches away from Cramer when Cramer shot him.

[4] We have previously "rejected the argument that only a suspect armed with a deadly weapon poses a physical threat sufficient to justify use of deadly force." Blossom v. Yarbrough, 429 F.3d 963, 968 (10th Cir. 2005). This principle is especially true in a case like this one where a body of water could be used to kill or seriously injure an officer.