**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALESHIA CYRESE HENDERSON,

     Plaintiff - Appellee,

v.

No. 14-5077

STANLEY GLANZ, Sheriff of Tulsa
County, in his individual and official
capacities; JALYNNA K. MOSER, as
Administrator of the Estate of Dalean Lynn
Johnson (Deceased); MICHAEL
THOMAS,

     Defendants - Appellants.
_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:12-CV-00068-JED-FHM)**
_____

Guy A. Fortney (Clark O. Brewster and Corbin C. Brewster, with him on the briefs),
Brewster & De Angelis, Tulsa, Oklahoma, appearing for Appellants.

Daniel E. Smolen (Robert M. Blakemore and Donald E. Smolen, with him on the brief),
Smolen, Smolen & Roytman, PLLC, Tulsa, Oklahoma, appearing Appellee.
_____

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

On September 27, 2011, Aleshia Henderson, a jail inmate, was located in a holding cell in the medical unit of the David L. Moss Criminal Justice Center in Tulsa, Oklahoma (the "Jail"). She had been handcuffed and placed in leg restraints. Detention Officers Dalean Johnson and Michael Thomas were on duty at the medical unit, but they left to assist with a medical emergency elsewhere. In their absence, Inmate Jessie Earl Johnson entered Ms. Henderson's unlocked holding cell and allegedly raped her.[1]

Ms. Henderson sued the officers in their individual capacities and Tulsa County Sheriff Stanley Glanz in his individual and official capacities[2] (collectively the "Defendants") under 42 U.S.C. § 1983. She alleged an Eighth Amendment violation for deliberate indifference to the risk of assault. Defendants moved for summary judgment based on qualified immunity. The district court denied the motion because Ms. Henderson raised genuine issues of material fact regarding Defendants' awareness of the risk of assault.

Defendants now seek an interlocutory appeal of the district court's decision. We dismiss the appeals of DO Johnson and Sheriff Glanz for lack of jurisdiction because they ask us to resolve issues of fact and do not turn on discrete questions of law. We have

---

[1] Because Detention Officer Johnson and Inmate Johnson share the same last name, the district court referred to the defendant detention officers as DO Johnson and DO Thomas and to the inmates present in the medical unit as Inmate Johnson and Inmate Williams. We will do the same here. We also note that although DO Johnson is now deceased and her estate has been named as a defendant, we will refer to DO Johnson in place of her estate for ease of reference.

[2] Sheriff Glanz did not appeal the district court's order in his official capacity.

jurisdiction over DO Thomas's appeal and determine he is entitled to qualified immunity because Ms. Henderson could not show he violated a clearly established constitutional right.

## I.  BACKGROUND

### A.  *Factual History*

The district court relied upon the following facts in its summary judgment order denying qualified immunity to Defendants.

### 1.  September 27 Incident

Ms. Henderson was booked into the Jail on June 3, 2011.  Jail personnel recognized that she was a special needs inmate because she exhibited mental health issues.  On September 27, 2011, she experienced chest pain and was taken to the Jail's medical unit.  The medical unit contains one main hallway that houses a desk where nurses and officers sit.  When Ms. Henderson entered the medical unit, DO Johnson and DO Thomas were on desk duty.  Two nurses, Susan Pinson and Charity Chumley, were also in the medical unit.[3]

Wearing handcuffs and leg restraints, Ms. Henderson was escorted to the tub room, a medical unit holding cell located near the desk.[4]  The tub room door has a single,

---

[3] The record does not clearly indicate the nurses' whereabouts at all times relevant to this suit.  We include here only the facts regarding the nurses that the district court relied upon.

[4] DO Johnson and Nurse Pinson testified that a third officer escorted Ms. Henderson into the room.  Ms. Henderson does not contest this fact, though Steven

Continued . . .

small window that generally remains covered. Jail policy required the tub room to be locked when it was being used as a holding cell. Nurse Pinson saw Ms. Henderson placed in the tub room.

Two male inmates were located in the hallway. Inmate Williams was receiving a breathing treatment. Inmate Johnson was seated in a chair next to the shower room, which is adjacent to the tub room. Inmate Johnson was in the Jail for assault and battery on a police officer. The Tulsa County Sheriff's Office ("TCSO")[5] had identified him as an "extreme escape risk" and worthy of "extreme caution" when being moved. Aplt. App. at 718. Despite these cautions, Inmate Johnson was a trustee for the prison kitchen, which permitted him greater freedom to move about the Jail without an escort officer or restraints.

At some point before 7:00 p.m., DO Johnson informed a nurse, apparently either Nurse Pinson or Nurse Chumley, that Ms. Henderson was in the tub room. The nurse responded, "Oh yeah, that's right." Aplt. Add. at 5. DO Johnson took this to mean that the nurse was ready to see Ms. Henderson, so DO Johnson unlocked the tub room door. DO Johnson was aware that Inmate Johnson was seated near the tub room and not

Williams, another inmate, testified that DO Johnson escorted Ms. Henderson into the tub room.

[5] TCSO supervised the Jail. Sheriff Glanz is TCSO's top official.

secured or otherwise restrained.[6]  She also was aware that Inmate Johnson could see her unlock the tub room door.

Shortly before 7:00 p.m., a medical emergency was declared in a separate area of the Jail.  When a gurney was requested from the medical unit, DO Thomas left to deliver it, though having an inmate deliver it would have been permissible under Jail policy. Nurse Chumley also left the medical unit to respond to the medical emergency.

When Nurse Chumley returned with the gurney holding an injured inmate, DO Johnson accompanied her and Nurse Pinson around the corner of the hallway and into an examination room to assist them.  At this point, DO Thomas had not returned from delivering the gurney, so only Inmates Johnson and Williams remained in the hallway. Neither Inmate Johnson nor Inmate Williams was secured or locked down before DO Thomas and DO Johnson departed.

Inmate Johnson told Inmate Williams that he intended to make sexual contact with Ms. Henderson.  Inmate Williams observed Inmate Johnson enter the unlocked tub room and exit approximately ten minutes later.  DO Johnson and DO Thomas returned to the hallway of the medical unit when Inmate Johnson was exiting the tub room.  Both observed the tub room door closing.  DO Johnson immediately confronted Inmate Johnson about being in the tub room.  He denied having been there.

---

[6] DO Johnson later testified at her deposition that officers are required to lock down unsecured inmates who are going to be unsupervised, but that they are not required to lock down trustees.  She was unaware, however, that Mr. Johnson was a trustee.

According to the TCSO investigative report, DO Johnson then entered the tub room, where the following exchange took place:

> [DO Johnson] asked Henderson if the male inmate had been in the room. Henderson put her head down, shook her head and didn't talk. Johnson then told Henderson she needed to talk and say what had happened. Johnson asked Henderson, "Did he touch you?" With this, Henderson shook her head yes. Johnson asked "Did he touch your breasts?" and Henderson shook her head no. Johnson asked "did he touch your crotch?" and Henderson said "Yes."

Aplt. Add. at 6.

DO Johnson exited the tub room and informed DO Thomas of this exchange. DO Johnson and DO Thomas told their supervisor, Sergeant James Pirtle, about the incident, and TCSO initiated its investigation.

Ms. Henderson was taken to a hospital for examination. She had bruising, swelling, and some mid-line tearing of her vagina that was consistent with forced intercourse. Inmate Johnson was subsequently charged with rape.[7]

The TCSO investigation reached the following conclusions regarding the officers' adherence to Jail policies:

> After conducting interviews and reviewing reports, I found policy was violated. The Medical Unit is essentially a segregation unit, requiring two officers at all times. D.O. Thomas left his post to respond to a medical

---

[7] The rape charge was ultimately dismissed because Ms. Henderson briefly recanted. The district court seemed to question her recanting because (1) Ms. Henderson later stated that she recanted because she was fearful for her mother's safety; (2) Defendants' own expert stated he believed the facts in the record showed that Ms. Henderson was raped; and (3) she recanted during an interview by TCSO deputies without her counsel present after filing this suit. Aplt. Add. at 7 n.6.

emergency when the inmate worker could have accomplished the same task. Additionally, D.O. Johnson and D.O. Thomas failed to maintain the log book in the Medical Unit, as required by policy. While this is a shared responsibility, Johnson knew Henderson was on the unit at some time around 17:30 hours and the log never reflected her arrival.

Regarding the alleged sexual assault, two major causal factors were identified. First, the tub room was unsecured at the time of the incident. It appears this was due to D.O. Johnson failing to relock the door when the medical emergency was called. The second was D.O. Thomas failing to remain at his assigned post. Thomas left the unit to respond to a medical emergency, thereby diminishing the ability of officers to properly supervise the unit. When D.O. [Johnson] entered the examination room, as required by policy, the main hall of the medical unit was left unsupervised and inmates were unsecured.

Aplt. App. at 605.

When later asked how she could be unaware of a risk of assault to Ms. Henderson, DO Johnson stated, "I don't know how to answer that." Aplt. App. at 638.

## 2. **Jail Policies and Previous Incidents of Sexual Misconduct**

TCSO policy requires constant double staffing in the medical unit. Despite this policy, both DO Thomas and DO Johnson testified it was common for one of the two medical unit officers to temporarily leave the unit to escort inmates or see to other duties. DO Thomas testified he was not trained on whether or when it was proper to leave the medical unit to perform other duties.

DO Johnson and DO Thomas underwent 160 hours of training at TCSO's Jail Academy. This training included prevention of sexual assaults. TCSO maintains a zero-tolerance policy against inmate rape and sex-related offenses:

The Tulsa County Sheriff's Office has a zero tolerance standard for the incidence of inmate rape and sex-related offenses and attempts thereof and will make every effort to prevent these incidents. The Sheriff's Office will

- 7 -

strictly enforce all federal and state laws regarding inmate sexual misconduct, threats of sexual assault or intimidation by providing clear definitions of prohibited conduct, establishing uniform methods of the prompt reporting and investigation of allegations of sex-related offenses or threats, identification of predators, protection of victims and prescribing sanctions for substantiated sexual offenses as well as false allegations.

TCSO Policy 20-12.1, found at Aplt. App. at 324.

In 2010, TCSO investigated two violations of its zero-tolerance sexual assault policy alleged by L.P. and L.S., who were juvenile female inmates housed in the medical unit. The investigation uncovered allegations that Officer Seth Bowers sexually assaulted L.P. at the Jail, and TCSO recommended that he be criminally prosecuted. Officer Bowers also allegedly subjected L.S. to sexually inappropriate behavior. Officer Bowers resigned because of the investigation.

Former TCSO Officer Cherry Anjorin gave the following testimony in this case about the medical unit:

[T]here were a lot of reported cases of the nurses having sex in the back medical rooms because there is nothing back there. I mean, you can go back there and sleep if you want to because there is no one to—and they are open to staff and to trustees that are in medical or inmates that come down to medical because the medical you had called down 80, 90—60, 70 inmates for physicals. That's excluding the people that are housed in medical. And so you have inmates just moving around in medical, and it was mostly only one person in there so you couldn't watch all the places. So there were inmates coming out of the rooms, the back rooms with nurses, and, of course, that's why I say a lot of nurses were fired.

Aplt. App. at 967.

Other accounts of sexual misconduct in the medical unit included a nurse in the medical unit allegedly sexually assaulting Inmate D.P., a therapist subjecting female

- 8 -

inmates to inappropriate conduct, and a nurse having a sexual relationship with a male inmate.

Former TCSO nurse Robin Mason, who worked at the Jail from March 2009 to October 2010, testified that there was "a persistent lack of security within the medical unit" because the inmates and staff were aware of the lack of video surveillance. Aplt. App. at 994. Officer Anjorin asserted, however, that when an inappropriate relationship between staff and an inmate was discovered, the staff member was immediately fired, and detention officers were reminded of that fact at the next staff meeting. All instances of sexual misconduct referenced by Officer Anjorin and Nurse Mason involved staff-on-inmate sexual misconduct.

When asked what remedial measures he took to address the allegations of sexual assault, Sheriff Glanz said he told the staff to be more attentive. When asked whether he took other measures, he responded, "I can't specifically say that any that I'm aware of were made." Aplt. App. at 852-53.

B. *Procedural History*

Ms. Henderson brought suit under 42 U.S.C. § 1983 against Defendants for violation of her Eighth Amendment rights. Defendants moved for summary judgment, arguing they were entitled to qualified immunity because Ms. Henderson could not show they had violated her constitutional right. Specifically, they contended Ms. Henderson could not show that Defendants were deliberately indifferent to a substantial risk of harm to her. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The district court determined

there existed genuine issues of material fact regarding whether DO Johnson and DO

Thomas were aware of the risk of assault:

> Both DO Johnson and DO Thomas were aware that Henderson was in the tub room at the time in question and that she was restrained. DO Johnson was specifically aware that Inmate Johnson was seated near the tub room and unrestrained. She also knew that Inmate Johnson was in a position such that he could have observed her unlock the tub room door. DO Johnson acknowledges unlocking the tub room door, but states that she thought it was locked when she left the main area of the medical unit. She did not, however, do anything to lock down or otherwise restrain Inmate Johnson despite the fact that TCSO policy mandated that unsecured inmates be secured in such situations and the fact that she was fully aware that Inmate Johnson would be without the supervision of a Detention Officer. Nor did DO Thomas attempt to restrain Inmate Johnson prior to DO Thomas' departure from the medical unit, despite the fact that his departure inhibited the ability of DO Johnson to properly supervise the medical unit, which requires the presence of two Detention Officers. Neither Detention Officer checked on Henderson prior to their discrete departures, or made any effort to ensure that the tub room door was locked. When faced with these facts, DO Johnson could not explain why she believed no substantial risk was posed to Henderson, other than to say that a nurse remained at the medical desk—a fact directly controverted by other parts of the record. Construing these facts in the light most favorable to Henderson, a reasonable trier of fact could infer that that [sic] DO Johnson and DO Thomas had knowledge of a substantial risk of harm to Henderson based upon the obviousness of the risk and that they failed to take steps to alleviate that risk. As such, the Court finds that genuine issues of material fact exist as to whether DO Johnson and DO Thomas were deliberately indifferent. They are therefore not entitled to qualified immunity on the basis that no constitutional violation occurred as a matter of law.

Aplt. Add. at 15-16 (footnotes omitted).

The district court did not make any specific factual determinations regarding

whether DO Johnson or DO Thomas knew that the door to the tub room was locked when

they left the medical unit hallway.

- 10 -

As for Sheriff Glanz, the district court determined he was not entitled to qualified immunity because there were genuine issues of material fact regarding his awareness of the risk of assault to Ms. Henderson. The court noted the Jail's policies regarding sexual assaults and double staffing in the medical unit. On the other hand, it determined a reasonable jury could find that the sexual assaults on L.P. and L.S. put Sheriff Glanz on notice of the risk of assault to inmates due to lack of surveillance and adequate staffing in the medical unit. Based on this factual dispute regarding the Sheriff's awareness of the risk of assault, the district court determined that a reasonable jury could find that Sheriff Glanz's lack of response could amount to deliberate indifference under the Eighth Amendment.

Finally, the district court, having determined there were genuine factual disputes regarding whether Defendants violated a constitutional right, concluded in a footnote that this right was clearly established in 2011:

> The defendants do not challenge the "clearly established" prong of the qualified immunity standard, other than in a single sentence stating that "Plaintiff failed to show that the Sheriff violated a clearly established right." (Doc. 82, at 21). Nevertheless, the Court finds that it is clearly established that inmates have a right to be free from assaults resulting from a jail official's failure to ensure sufficient staffing and/or supervision of inmates.

Aplt. Add. at 16 n.10.

## II. **JURISDICTION**

Our first task is to determine whether we have jurisdiction over this interlocutory appeal. Circuit court appellate jurisdiction is generally limited to final district court orders, with some limited exceptions. In this section, we discuss the jurisdictional

- 11 -

requirements for interlocutory review of a district court's denial of qualified immunity and apply them to each defendant. We conclude this court lacks jurisdiction over DO Johnson's and Sheriff Glanz's appeals but that we have jurisdiction to decide DO Thomas's appeal.

## A. *Legal Background*

This court has jurisdiction under 28 U.S.C. § 1291 to review "all final decisions of the district courts of the United States." Ordinarily, "[o]rders denying summary judgment are . . . not appealable final orders for purposes of 28 U.S.C. § 1291." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013).

Under the collateral order doctrine, however, a circuit court may review certain orders as appealable final decisions within the meaning of 28 U.S.C. § 1291 even though the district court has not entered a final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). "To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Gray v. Baker*, 399 F.3d 1241, 1245 (10th Cir. 2005) (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)).

Applying this standard we have determined "[t]he denial of qualified immunity to a public official . . . is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Fancher v. Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008)

- 12 -

(explaining we have interlocutory jurisdiction "over denials of qualified immunity at the summary judgment stage to the extent they 'turn[ ] on an issue of law'" (alteration in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985))).

On interlocutory appeal, we may review: "'(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation.'" *Roosevelt-Hennix*, 717 F.3d at 753 (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1267 (10th Cir. 2013)). Under the Supreme Court's direction in *Johnson v. Jones*, 515 U.S. 304 (1995), however, this court has no interlocutory jurisdiction to review "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 515 U.S. at 320.

*Johnson* does not preclude review of all district court orders that deny qualified immunity on factual grounds. Rather, "[e]ven when the district court concludes issues of material fact exist, 'we have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001)). "We need not . . . decline review of a pretrial order denying summary judgment [in the qualified-immunity context] solely because the district court says genuine issues of material fact remain; instead, we lack jurisdiction only if our review would require second-guessing the district court's determinations of evidence sufficiency." *Medina*, 252 F.3d at 1130.

Thus, if on interlocutory appeal from a denial of qualified immunity a defendant-appellant's "argument is limited to a discussion of [his or her] version of the facts and the

inferences that can be drawn therefrom" and presents only "a challenge to the district court's conclusion [p]laintiffs presented sufficient evidence to survive summary judgment," we lack jurisdiction to consider that argument. *Castillo v. Day*, 790 F.3d 1013, 1018 (10th Cir. 2015); *see also Gray*, 399 F.3d at 1247-48. Conversely, our jurisdiction "is clear when the defendant does not dispute the facts alleged by the plaintiff" and raises only legal challenges to the denial of qualified immunity based on those facts. *Farmer v. Perrill*, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002). "[I]f the defendant does dispute the plaintiff's allegations[,] 'the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Id.* (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

Even when an appellant challenges the district court's findings of genuine issues of material fact, the Supreme Court has recognized two circumstances in which we may nonetheless exercise interlocutory review. First, "if a district court fails to specify which factual disputes precluded a grant of summary judgment for qualified immunity, . . . we 'may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Estate of Booker v. Gomez*, 745 F.3d 405, 410 (10th Cir. 2014) (quoting *Johnson*, 515 U.S. at 319). "Second, when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,' we may assess the case based on our own de novo view of which facts a reasonable jury could accept as true." *Lewis v. Tripp*, 604 F.3d 1221, 1225-26 (10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

- 14 -

B. *Analysis*

We discuss each defendant to determine whether we have jurisdiction to conduct interlocutory review of his or her appeal.

## 1. **DO Johnson**

Appellants' brief argues we have jurisdiction to consider DO Johnson's appeal because "a question of law exists as to whether a jailer's decision to assist a nurse in the jail's medical unit during a medical emergency satisfies the deliberate indifference requirement to establish liability when that jailer believed [Ms. Henderson] was secure within a locked holding cell." Aplt. Br. at 6. This argument does not accept as true Ms. Henderson's version of the facts or view the facts in the light most favorable to Ms. Henderson. Because it instead challenges the district court's factual determinations, we lack jurisdiction over DO Johnson's appeal.

Ms. Henderson asserted in her summary judgment briefing and asserts on appeal that DO Johnson knew the door to the tub room was unlocked when she left the medical unit hallway. DO Johnson's argument[8] does not accept as true Ms. Henderson's version of this fact. The district court did not make any factual determination about DO Johnson's knowledge of the door being unlocked, but it did determine that DO Johnson was aware of a substantial risk of harm to Ms. Henderson. DO Johnson's argument is therefore not based on the facts viewed in the light most favorable to Ms. Henderson.

---

[8] Although the opening brief was filed on behalf of all Appellants, we refer to a particular appellant—in this instance DO Johnson—when the argument in the brief is specific to that person.

- 15 -

Instead, DO Johnson's argument presents "a challenge to the district court's conclusion [that Ms. Henderson] presented sufficient evidence to survive summary judgment." *Castillo*, 790 F.3d at 1018. We may not consider it on appeal unless the district court's view of the facts is blatantly contradicted by the record or the court failed to specify the facts on which it rested its denial of qualified immunity to DO Johnson.

The district court's factual determination of DO Johnson's awareness of the risk of assault is not clearly contradicted by the record. [9] Further, although the district court did not say whether a reasonable jury could find that DO Johnson knew the door was unlocked when she left the hallway of the medical unit, the court determined there was a genuine issue of material fact about whether DO Johnson was aware of a risk of assault to Ms. Henderson based on (1) DO Johnson's failure to secure Inmates Johnson and Williams before leaving the hallway of the medical unit, (2) her failure to check on Ms. Henderson before leaving, and (3) her inability to express why there was no risk of assault to Ms. Henderson. DO Johnson's argument challenges the district court's finding of a disputed issue regarding risk awareness.

---

[9] Indeed, the record indicates that when DO Johnson was asked whether she knew the door to the tub room was unlocked, she answered the following:

> Okay. Yes, I unlocked the door. Yes, the medical emergency happened. Yes, I went down to the treatment room. It is always my practice to lock the door. I didn't lock the door.

Aplt. App. at 632.

- 16 -

Under this circumstance, where the district court specified the facts on which it based the denial of summary judgment, *see Johnson*, 515 U.S. at 319, we lack jurisdiction over DO Johnson's interlocutory appeal because it "would require second-guessing the district court's determinations of evidence sufficiency," *Medina*, 252 F.3d at 1130.

2. **Sheriff Glanz**

Appellants' brief argues we have jurisdiction to consider Sheriff Glanz's appeal because it presents an "abstract question[] of law" regarding whether "a § 1983 claim based on supervisory liability can be supported absent any allegation that the defendant/supervisor had any notice of the risk of inmate-on-inmate assault in the medical unit of the jail, based upon alleged understaffing and alleged insufficient video surveillance, when there had never been a documented instance of an inmate-on-inmate assault in the jail's medical unit's history."   Aplt. Br. at 6.

This argument does not accept as true Ms. Henderson's version of the facts or view the facts in the light most favorable to Ms. Henderson.  Because it instead challenges the district court's factual determinations about the sheriff's risk awareness and does not fall within one of the exceptions to the rule that we may only consider purely legal questions on appeal from a denial of qualified immunity, we lack jurisdiction over Sheriff Glanz's appeal.

The district court determined that Sheriff Glanz was not entitled to qualified immunity because there were genuine issues of material fact regarding his awareness of the risk of assault to Ms. Henderson.  The court acknowledged the Jail's policies

regarding sexual assaults and double staffing in the medical unit. But it also noted the evidence of sexual assaults on L.P. and L.S. and the evidence suggesting there was often only one officer in the medical unit and no video surveillance. Based on these facts, the district court determined that a reasonable jury could find Sheriff Glanz had notice of a risk of assault to inmates and that he was unresponsive to this risk.

Instead of accepting these facts as true or viewing the facts in the light most favorable to Ms. Henderson, Defendants argue Sheriff Glanz had no notice of a risk of assault because there had been no documented instances of inmate-on-inmate assault in the Jail. This argument ignores the district court's factual determination that staff-on-inmate assaults gave Sheriff Glanz notice about the risk of other kinds of assault—including the risk of sexual assault to female inmates by male inmates in the medical unit—caused by lack of surveillance and adequate staffing. Sheriff Glanz's argument poses "a challenge to the district court's conclusion [that Ms. Henderson] presented sufficient evidence to survive summary judgment." *Castillo*, 790 F.3d at 1018.

We may not consider this challenge on appeal unless the record clearly contradicts the district court's factual determinations or the district court failed to identify the factual disputes on which it rested its decision to deny qualified immunity. Defendants do not argue that either circumstance arises here. The district court clearly stated, and the record does not contradict, the facts it relied on in denying qualified immunity to Sheriff Glanz.

We lack jurisdiction over Sheriff Glanz's interlocutory appeal because it "would require second-guessing the district court's determinations of evidence sufficiency." *Medina*, 252 F.3d at 1130.

- 18 -

3. **DO Thomas**

The district court determined that a reasonable jury could find that DO Thomas was aware of the risk of assault to Ms. Henderson. But this determination is "blatantly contradicted by the record." *See Lewis*, 604 F.3d at 26 (quoting *Scott*, 550 U.S. at 380). The record indicates that, when DO Thomas left to deliver the gurney for the medical emergency, he knew only that Ms. Henderson was in the tub room and that DO Johnson was in the medical unit outside the tub room. DO Thomas testified that he believed the door to the tub room was locked when he left. Ms. Henderson presented no evidence to the contrary.

These undisputed record facts blatantly contradict the district court's factual determination that DO Thomas could have been subjectively aware of a substantial risk of bodily harm to Ms. Henderson. We therefore have jurisdiction to determine whether, as a matter of law, DO Thomas violated Ms. Henderson's clearly established constitutional right. We turn to that issue next.

## III. **MERITS – DO THOMAS**

### A. *Legal Background*

1. **Section 1983 and Qualified Immunity**

Title "42 U.S.C. § 1983 allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013). "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," *id.* at 460, which "shields public officials . . . from damages actions unless their conduct was

unreasonable in light of clearly established law," *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (alteration in original) (quotations omitted).  Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460; *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

To determine whether the right was clearly established, we ask whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (alterations and quotations omitted).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty*, 523 F.3d at 1161 (quotations omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quotations omitted).

2. **Summary Judgment Standard**

"We review de novo the district court's denial of a summary judgment motion asserting qualified immunity." *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010) (quoting *Bowling v. Rector*, 584 F.3d 956, 963 (10th Cir. 2009)).  A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *as modified on denial of reh'g* .  "In applying this standard, we construe the evidence in the light most favorable to [the plaintiff] as the nonmoving party."  *McBeth*, 598 F.3d at 715.

When the defendant has moved for summary judgment based on qualified immunity, we still view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor.  *See Estate of Booker*, 745 F.3d at 411.  Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law.  *See id.*  Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (asking whether "a violation could be made out on a favorable view of the parties' submissions"), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("[T]he Supreme Court has held that qualified immunity is proper when the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law.").

"We may, at our discretion, consider the two parts of this test in the sequence we deem best 'in light of the circumstances in the particular case at hand.'"  *Bowling*, 584

F.3d at 964 (quoting *Pearson*, 555 U.S. at 236). If a "plaintiff successfully carries his two-part burden," the "defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *see also Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988) (same).

## B. *Analysis*

The district court erred in denying DO Thomas summary judgment because Ms. Henderson did not meet her burden of establishing the second element of qualified immunity—that any violation of the Eighth Amendment she may have suffered was based on a clearly established constitutional right.[10]

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

---

[10] Ms. Henderson argues on appeal that Defendants have forfeited their argument that any violation of a constitutional right was not clearly established by failing to adequately raise this argument in district court. We have recently determined that because the plaintiff has the burden at summary judgment to identify a violation of a clearly established constitutional right after a defendant asserts qualified immunity, "even assuming arguendo that [a defendant] forfeited his appellate arguments based on the clearly-established-law prong of the qualified-immunity standard, we would deem consideration of these arguments to be an appropriate exercise of our discretion." *Cox v. Glanz*, 800 F.3d 1231, 1244 (10th Cir. 2015). Because it was Ms. Henderson's burden to show a clearly established constitutional right, even assuming Defendants did not adequately raise this issue in district court, we will consider these arguments to the extent we have jurisdiction to do so.

*Farmer*, 511 U.S. at 847; *see also Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) ("[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'") (quoting *Farmer*, 511 at 844-45).

Ms. Henderson relies on the district court's brief footnote analysis concluding it was clearly established that "inmates have a right to be free from assaults resulting from a jail official's failure to ensure sufficient staffing and/or supervision of inmates." Aplt. Add. at 16 n.10. Although Supreme Court and Tenth Circuit cases support this general proposition, *see Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993); *Farmer*, 511 U.S. at 847, the Supreme Court has admonished "not to define clearly established law at a high level of generality," *al-Kidd*, 131 S. Ct. at 2084. Though "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *al-Kidd*, 131 S. Ct. at 2083).

Ms. Henderson has provided no authority clearly establishing that an officer violates the Eighth Amendment when that officer, as here with DO Thomas, has no subjective knowledge of risk of assault to an inmate, leaves to attend to a medical emergency, and does so believing the inmate is in a locked room under the guard of another officer. Moreover, although DO Thomas may have violated Jail policy by leaving the medical unit in the care of only DO Johnson, Ms. Henderson offers no authority to show this was a clearly established constitutional violation. Because Ms.

Henderson has not carried her burden to show violation of a clearly established constitutional right, the district court erred in denying DO Thomas qualified immunity.

## IV. **CONCLUSION**

Because DO Johnson's and Sheriff Glanz's appeals would require us to second-guess the district court's factual determination that the evidence sufficed to show that they were aware of a risk of assault to Ms. Henderson, we lack jurisdiction to consider them. Although DO Thomas's appeal similarly challenged the district court's factual determinations, the court relied on a version of the facts that is blatantly contradicted by the record, and we therefore have jurisdiction to consider his appeal. On the merits of DO Thomas's appeal, because Ms. Henderson has not carried her burden of establishing he violated a constitutional right that was clearly established, we conclude the district court erred in holding he is not entitled to qualified immunity.

We therefore dismiss the appeals of DO Johnson and Sheriff Glanz for lack of jurisdiction. We reverse the district court's denial of qualified immunity to DO Thomas.