**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MANDI WRIGHT, individually and as
Administrator of the Estate of Cory Wright,
deceased,

     Plaintiff - Appellee,

v.

JENNIFER COLLISON, in her individual
capacity, JEREMY CANNON, in his
individual capacity, GARY STANLEY,
individually and in his official capacity as
Sheriff of Woodward County,

     Defendants - Appellants,

and

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF WOODWARD,

     Defendant.

Nos. 15-6046, 15-6058 & 15-6123
(D.C. No. 5:11-CV-01235-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Cory Wright was beaten by other inmates while in custody at the Woodward County Jail in Woodward, Oklahoma.[1] He brought suit under 42 U.S.C. § 1983 against, among others, Sheriff Gary Stanley and jailers Jennifer Collison and Jeremy Cannon (Defendants). He died soon thereafter, and his widow and estate were substituted as plaintiffs; but for convenience we will refer to the plaintiff as Mr. Wright. Defendants appeal the district court's orders denying their motions for summary judgment based on qualified immunity with respect to the claims against them in their personal capacities. We reverse and remand with directions to grant qualified immunity to Sheriff Stanley (appeal No. 15-6123) but affirm the denials of qualified immunity to Officer Collison (appeal No. 15-6046) and Officer Cannon (appeal No. 15-6058).

## I. BACKGROUND

Because we are reviewing denials of motions for summary judgment based on qualified immunity, we rely on undisputed facts and the facts favoring Mr. Wright for which the district court determined there was sufficient evidence. *See Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015). Late on August 16, 2011, Mr. Wright was arrested for driving under the influence of alcohol. His two passengers were arrested for public intoxication. Sheriff Stanley was the jail supervisor but he was not present that night. Officers Collison and Cannon were the jailers on duty when Mr. Wright was booked into the jail. Officer Collison was training Officer Cannon.

---

[1] A new Woodward County Jail opened about three months after Mr. Wright was beaten.

During the drive to the jail, Mr. Wright and Jeff Tindel, a passenger and coworker, had a disagreement arising out of concern that their arrest would cost them their jobs. After arriving at the jail, Mr. Wright told Officer Cannon that he and Mr. Tindel would fight if they were both placed in the drunk tank. Although jail policy was to place intoxicated inmates in the drunk tank separated from the general population, Officer Collison decided to place Mr. Wright in Cell 6 after Officer Cannon informed her of Mr. Wright's statement that he and Mr. Tindel would fight.

The jail was over capacity at the time. Cell 6 had an inmate capacity of four yet housed at least five inmates before Mr. Wright was placed there. When Officer Cannon approached Cell 6 with Mr. Wright, the inmates already in the cell threatened to harm Mr. Wright and told Officer Cannon not to put him in their cell. Officer Cannon told them to give him five minutes to find another cell for Mr. Wright. One of the inmates responded that five minutes would not work. Nevertheless, Officer Cannon (with Officer Collison present) placed Mr. Wright in Cell 6 and returned to the booking area. Less than a minute later, Officers Cannon and Collison heard a commotion and ran to the cell, where they found Mr. Wright on the floor with injuries to his face. Mr. Wright was treated at the hospital emergency room and released from the hospital and from jail custody on August 17.

Mr. Wright alleges that Officers Collison and Cannon violated his constitutional rights by acting with deliberate indifference in failing to protect him from other inmates despite their threats to harm him. And he claims that Sheriff Stanley's supervisory policy and practice of housing inmates in overcrowded cells, with actual knowledge that those

conditions posed a substantial risk of serious harm to inmates, caused his constitutional rights to be violated.

## II. APPLICABLE LAW

### A. Jurisdiction

Ordinarily we lack jurisdiction to hear appeals of denials of summary judgment because they are not final orders. *See Henderson*, 813 F.3d at 947. But denials of qualified immunity are different. "[Q]ualified immunity is an *immunity from suit* rather than a mere defense to liability. [I]t is effectively lost if a case is erroneously permitted to go to trial." *Brown v. Montoya*, 662 F.3d 1152, 1161 (10th Cir. 2011) (ellipsis and internal quotation marks omitted). Therefore, we have jurisdiction over these interlocutory appeals. *See Henderson*, 813 F.3d at 947. Our review is limited, however, to "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Id.* at 948 (internal quotation marks omitted). We do not have jurisdiction to determine "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," *id.* (internal quotation marks omitted), although "even when the district court concludes issues of material fact exist, we [may review] the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law," *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) (brackets and internal quotation marks omitted). That review is de novo. *See Perez v. United Gov't of Wyandotte Cty./Kan. City*, 432 F.3d 1163, 1166 (10th Cir. 2005) ("If de novo review of the alleged facts demonstrates that they do not amount to a violation of a clearly

established right, we reverse a denial of summary judgment on qualified immunity grounds."). "[W]e lack jurisdiction only if our review would require second-guessing the district court's determinations of evidence sufficiency." *Cox*, 800 F.3d at 1242 (internal quotation marks omitted).

### B. Qualified Immunity

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. Only if the plaintiff has satisfied both steps is qualified immunity defeated." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (citation and internal quotation marks omitted). We have discretion to determine which element to examine first. *See Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014). "To determine whether the right was clearly established, we ask whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 411 (internal quotation marks omitted). A plaintiff may show that the law is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cox*, 800 F.3d at 1247 (internal quotation marks omitted). The Supreme Court, however, has "repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citation, ellipsis, and internal quotation marks

omitted); *see Cox*, 800 F.3d at 1247 n.8 (plaintiff cannot discharge his burden by relying on "authorities that do no more than establish general legal principles"). Therefore, "we have adopted a sliding scale: The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Morris*, 672 F.3d at 1196 (internal quotation marks omitted).

### C. Prisoner Safety

"Prison and jail officials, as well as the municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners. Nonetheless, they have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Cox*, 800 F.3d at 1247-48 (citation, brackets, and internal quotation marks omitted). Mr. Wright's claims are governed by the Due Process Clause rather than the Eighth Amendment because Mr. Wright was a pretrial detainee. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). Even so, to determine whether Mr. Wright's constitutional rights were violated, "we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Id.* "To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he [was] incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Smith v. Cummings,* 445 F.3d 1254, 1258 (10th Cir. 2006) (brackets and internal quotation marks omitted). Regarding the subjective component, the plaintiff bears the burden to show that the defendants

responded in an "objectively unreasonable manner"—that is, they "knew of ways to reduce the harm but knowingly or recklessly declined to act." *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (brackets and internal quotation marks omitted).

## III. DISCUSSION

### A. Sheriff Stanley

We dispose of the claims against Sheriff Stanley on the clearly-established-law prong. "[W]e inquire whether, under [Mr. Wright's] version of the facts, then-extant clearly established law would have given Sheriff [Stanley] fair warning that he could be held liable for his conduct under a supervisory-liability theory for violating [Mr. Wright's due-process] rights." *Cox*, 800 F.3d at 1247.

The district court found the following facts to be uncontested or (if favorable to the nonmovant, Mr. Wright) supported by sufficient evidence: Inmate-on-inmate violence at the jail was rare and did not increase appreciably with overcrowding conditions, although overcrowding made the jail dangerous for the staff; overcrowding had been a recurring condition since at least 2008 and Sheriff Stanley was aware of this; between October 2007 and May 2011 the state health department cited the jail at least seven times for violations based in part on overcrowding; a 2009 report by a jail consultant stated, "The county jail is almost 32 years old. It is not safe for the jail staff or inmates. The jail does not meet any state jail standards, or state fire codes," Aplt. App. (No. 15-6123) Vol. 14, at 268; in an effort to obtain funding for a new jail, Sheriff Stanley created and circulated a campaign flyer in 2009 describing the jail as overcrowded and asserting that a new jail was necessary to "PROTECT Inmates from

- 7 -

injuring each other and themselves," *id.*; the jail was overcrowded for 896 days preceding the assault on Mr. Wright; at the time Mr. Wright was arrested, a new jail was being constructed, but it had not improved conditions at the existing jail; in 2009, Sheriff Stanley requested the local district attorney and a judge to reduce the amount of bonds on incoming inmates to help reduce overcrowding; between 2008 and August 2011, Sheriff Stanley contacted five other counties, once each, to ask if they could take overflow inmates, but did not contact any other nearby counties; in 2009 the Custer County Jail agreed to allow jail inmates to be housed there; the Woodward City Jail agreed to take a few inmates if it had room; and Sheriff Stanley "failed to utilize other interim measures, such as early release, bond reduction, and ankle monitor bracelets," *id.* at 270.

Although Sheriff Stanley argued that Mr. Wright had not presented evidence that the suggested remedies were feasible (and Mr. Wright has not disputed that a sheriff was required to take all prisoners brought for booking), the district court said it should not weigh the evidence on the matter. It concluded that Sheriff Stanley's supervisory conduct could be considered unconstitutional because it was clearly established that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 275 (ellipsis and internal quotation marks omitted). But the law governing a sheriff's obligations *in these circumstances* was not clearly established. The issue is whether case law existing as of August 2011 would alert any reasonable sheriff that he had a constitutional duty to reduce overcrowding by any of the measures suggested by Mr. Wright. But neither Mr. Wright nor the district court has cited such case law. Sheriff Stanley is entitled to qualified immunity.

## B. Officers Collison and Cannon

The district court found sufficient evidence to support the following facts relevant to Mr. Wright's claims against Officers Collison and Cannon: After Mr. Wright and his two coworkers arrived at the jail but before they were placed in cells, Mr. Wright told Officer Cannon that if he and Mr. Tindel were placed in the same cell, they would fight; Officer Collison decided to put Mr. Wright into Cell 6, rather than in the drunk tank with Mr. Tindel; Officer Cannon escorted Mr. Wright from the booking area to Cell 6; Officer Collison was present at the door to Cell 6 while Mr. Wright was placed in the cell; before Mr. Wright was put in Cell 6, the prisoners already there told Officers Collison and Cannon not to put Mr. Wright in Cell 6 and threatened to harm him; Officer Cannon told the inmates to give him five minutes to find another cell for Mr. Wright, to which one of them replied that five minutes would not work; Officer Cannon put Mr. Wright in Cell 6 and headed for the booking area; and 45 seconds to one minute later, Officers Cannon and Collison heard fighting and yelling so they ran back to Cell 6, where they discovered Mr. Wright on the floor with facial injuries that required medical treatment. We recognize that Defendants point to contrary evidence, such as Officer Cannon's assertion that he did not hear any of the Cell 6 inmates threaten to harm Mr. Wright. But we do not weigh the evidence.

Given the district court's determination of what facts are adequately supported by evidence, we must affirm its ruling on qualified immunity. At the time of Mr. Wright's beating, the law was clearly settled that prison authorities had a constitutional obligation to act to protect a prisoner who had been plausibly threatened with serious harm by

fellow inmates.  *See, e.g., Howard, 534 F.3d at 1235-37.*  A defendant is not entitled to qualified immunity simply because the threat and the surrounding circumstances in his or her case are not identical to those in any precedent.  If the evidence reveals that the threat of serious injury is plausible, the duty to protect is clear.  As for whether Officers Collison and Cannon acted with deliberate indifference, we believe that a reasonable juror could believe that their decision to put Mr. Wright in the cell, rather than keeping him in their custody while deciding where best to place him, showed not just negligence but the requisite recklessness.  We therefore affirm the court's denial of the qualified-immunity motions by Officers Collison and Cannon.

## IV.  CONCLUSION

We reverse the district court's denial of qualified immunity to Sheriff Stanley, but affirm its denial of relief to Officers Collison and Cannon.

Entered for the Court

Harris L Hartz
Circuit Judge