**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

| | |
|---|---|
| JANELLE BRIDGES, individually and as the surviving spouse of Shane Allen Bridges, deceased, and as the Mother and Next Friend of: A.B., a minor child; B.B., a minor child; S.B. Jr., a minor child; A.C., a minor child; J.S., a minor child; J.H., a minor child, | |
| Plaintiffs - Appellees, | No. 16-5177 |
| v. | (D.C. No. 4:15-CV-00126-GKF-PJC) |
| | (N.D. Okla.) |
| KYLE WILSON, in his individual and official capacity, | |
| Defendant - Appellant, | |
| and | |
| MIKE REED, in his individual and official capacity; MAYES COUNTY, | |
| Defendants. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Appellees, heirs of Shane Bridges (hereinafter the "estate of Shane Bridges" or the "estate"), brought this action under 42 U.S.C. § 1983. The estate alleges Appellant Kyle Wilson—a deputy sheriff in Mayes County, Oklahoma—used excessive force in violation of the Fourth Amendment in shooting and killing Bridges on January 1, 2014. Following discovery, Wilson filed a motion for summary judgment. The district court determined that a jury could find Bridges did not fire or even point a gun at Wilson. By taking this view—the version of the facts most favorable to the estate, the non-moving party—the district court concluded Wilson did not carry his burden of proving that he was entitled to qualified immunity. The district court subsequently denied Wilson's summary judgment motion because there were genuine issues of material fact. Wilson now brings this interlocutory appeal, arguing that we have jurisdiction under 28 U.S.C. § 1291. Because Wilson asks us to resolve disputes of material fact that do not rest on discrete questions of law, we lack appellate jurisdiction and dismiss this appeal.

**I**

When reviewing a district court's denial of qualified immunity at the summary judgment stage, we generally do not make our own factual determinations, but rely instead on the district court's recitation of the facts. See Johnson v. Jones, 515 U.S. 304, 319–20 (1995). Here, the district court found the following:

> This case arises from the fatal shooting of Shane Bridges by [Kyle Wilson, a deputy sheriff of the Mayes County Sheriff's Office,] on January 1, 2014 . . . . Wilson received a dispatch call notifying him that there was an intoxicated, possibly suicidal person who was possibly

2

threatening harm to a child at the Bridges's residence. Wilson arrived and exited his vehicle and stood by the front, driver's side tire of his patrol car. Shane Bridges was in the front room of the house when Wilson arrived, and went to the door, opening and closing the door. Wilson fired thirteen shots in Bridges's direction, hitting Bridges twice and fatally wounding him . . . .

[V]iewing the evidentiary materials in the light most favorable to the plaintiffs, Wilson did not identify himself as law enforcement officer, order Bridges to drop a weapon, or give Bridges any other commands; Bridges did not fire a gun; and, at the time of the shooting, the distance between Wilson and Bridges was approximately thirty to thirty-five feet.

D. Ct. Order at 1, 3–4 (record citations omitted).

Wilson argues for a different version of the facts on appeal, as he did in his summary judgment briefing before the district court. In its summary judgment order, the district court explained why it discounted Wilson's version of the events. It stated:

Deputy Wilson testified that after he exited his vehicle, Bridges opened the front door of the residence, stepped onto the front porch, and fired a single shot, although not in Wilson's direction. Wilson testified that he then shouted Shane Bridges's name, after which Shane turned and started firing again. Turning a gun on Wilson would be a hostile motion, even if Bridges did not fire. Although the testimony of Janelle Bridges[, Shane Bridges's widow,] and Rex Dale Cowan[, a neighbor and first responder who lived in the home closest to the Bridges and heard gunshots,] addresses whether Shane Bridges *fired* a gun [and suggests Shane Bridges did not fire his gun], the only evidentiary material addressing whether Shane Bridges *turned* the gun in Wilson's direction is Wilson's own testimony. None of the evidentiary materials submitted by the parties contradicts Wilson's testimony on this issue. However, "courts should be cautious on summary judgment to 'ensure that the

3

officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify.'" [Pauly v. White, 814 F.3d 1060, 1079–80 (10th Cir. 2016)][1] (quoting Abraham v. Raso, 183 F.3d 279, 294 (3d Cir. 1999)). "[T]he court may not simply accept what may be a self-serving account by the police officer." Id. at 1080 (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)). The court "must also look at the circumstantial evidence that, if believed would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." Id. The court concludes a rational factfinder could—based on the testimony of Janelle Bridges and Rex Dale Cowan—conclude Wilson's testimony that Bridges fired a gun was inaccurate, and could, accordingly, discredit Wilson's testimony that Shane Bridges turned to point a gun at him.

D. Ct. Order at 4 (record citations omitted).

Thus, the district court determined that, viewing the facts in the light most favorable to the estate, Wilson committed a clearly established Fourth Amendment violation. Id. at 5. The district court then held "summary judgment is not appropriate because genuine issues of material fact remain, including . . . whether Bridges pointed or fired a gun at Wilson before Wilson shot Bridges, and thus whether Wilson's use of deadly force was objectively reasonable in light of the circumstances." Id. at 5–6.[2] Wilson then filed this interlocutory appeal of the district court's denial of qualified immunity. Vol. VIII at 1427.

---

[1] The Supreme Court subsequently vacated this opinion. See Pauly v. White, 137 S. Ct. 548 (2017).

[2] In addition to this § 1983 excessive force claim against Wilson in his individual capacity, the estate's complaint also included a § 1983 claim against

(continued . . .)

4

Before we can consider the merits of Wilson's qualified immunity argument, we must address the threshold question of whether we have appellate jurisdiction. See Cox v. Glanz, 800 F.3d 1231, 1241 (10th Cir. 2015). Under 28 U.S.C. § 1291, we can review "all final decisions of the district courts." A denial of summary judgment is ordinarily not an appealable final order under § 1291. Roosevelt–Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013). Yet, under the collateral order doctrine, a state official may appeal the district court's denial of qualified immunity at summary judgment—but only to the extent it involves abstract issues of law. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); see also Fancher v. Barrientos, 723 F.3d 1191, 1198 (10th Cir. 2013).

To satisfy the requirements for appellate jurisdiction under the collateral order doctrine, the appellant-defendant "must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." Henderson v. Glanz, 813 F.3d 938, 947 (10th Cir.

---

(continued . . .)

Wilson in his official capacity, an Oklahoma Government Tort Claims Act cause of action against Wilson, claims against the Mayes County sheriff in his individual and official capacities, and municipal liability claims against Mayes County. Although the district court granted summary judgment on all of those claims, none of those claims are relevant to this appeal, as we are merely addressing Wilson's interlocutory appeal from the denial of qualified immunity.

2015) (quotation omitted); see also Johnson, 515 U.S. at 310. If the district court denied summary judgment because there was a genuine issue of material fact, we lack jurisdiction because the defendant-appellant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson, 515 U.S. at 319–20.

Yet, even under Johnson and its progeny, a district court's determination that genuine issues of material fact preclude summary judgment does not necessarily bar our exercise of appellate jurisdiction in all cases. See Henderson, 813 F.3d at 948. We still have jurisdiction to address the merits of the qualified immunity analysis, but "only if our review would [not] require second-guessing the district court's determinations of evidence sufficiency." Id. (quoting Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001)). That is, "[w]e may not and do not . . . second guess the district court's determinations of evidence sufficiency," T.D. v. Patton, 868 F.3d 1209, 1213 n.4 (10th Cir. 2017), because "'whether or not the pretrial record sets forth a genuine issue of fact for trial' is not an abstract legal question, and a court of appeals lacks jurisdiction to review a district court's ruling on such a matter," Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1267 (10th Cir. 2013) (quoting Johnson, 515 U.S. at 320).

We are left then with jurisdiction to hear cases in which "'the defendant does not dispute the facts alleged by the plaintiff' and raises only legal challenges to the denial of qualified immunity based on those facts." Henderson, 813 F.3d at 948 (quoting Farmer v. Perrill, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002)). By contrast,

6

we lack jurisdiction if the defendant-appellant's appeal presents a revised version of the facts and challenges "the district court's conclusion [that p]laintiffs presented sufficient evidence to survive summary judgment." Id. (quoting Castillo v. Day, 790 F.3d 1013, 1018 (10th Cir. 2015)).

**B**

In this appeal from the denial of qualified immunity, Wilson challenges the district court's version of the facts. Wilson argues the district court "went out of its way to ignore the undisputed fact that Shane Bridges pointed his gun toward Wilson," Aplt. Op. Br. at 29, because the paths of the bullets indicate that Bridges's arm may have been raised, id. at 28, and the estate allegedly has "no physical evidence" to contradict Wilson's testimony that Bridges pointed a gun at him. Id. at 29. Wilson therefore argues that "viewing the facts in the light most favorable to the" estate still requires that we reject the district court's findings and accept the assumption that Bridges "turned toward [Wilson] with a pointed firearm." Id. at 30; see also Aplt. Reply Br. at 6. Wilson then argues that, under this revised view of the facts, he is entitled to qualified immunity because there was no clearly established law which would have alerted a reasonable officer in Wilson's position that his use of deadly force would violate the Fourth Amendment. Aplt. Op. Br. at 30.

The type of factual analysis that Wilson urges us to undertake "would require second-guessing the district court's determinations of evidence sufficiency." Cox, 800 F.3d at 1242 (quotation omitted). In its summary judgment order, the district court concluded that "genuine issues of material fact remain" regarding whether

7

Bridges raised or fired a gun at Wilson. D. Ct. Order at 5–6. That is precisely the type of evidentiary analysis that we lack jurisdiction to address. Johnson, 515 U.S. at 319–20.

## C

But that conclusion does not end our review. Even if, on appeal from a denial of qualified immunity at summary judgment, a defendant-appellant challenges the district court's determinations of evidence sufficiency, we are still permitted to address the merits in two circumstances: (1) when the record "blatantly contradict[s]" the district court's factual recitation, Scott v. Harris, 550 U.S. 372, 380 (2007), or (2) when the district court failed to specify the facts upon which it based the denial of qualified immunity, Roosevelt-Hennix, 717 F.3d at 753–54 (holding that a review of the district court record was appropriate because the district court merely provided a short statement that the case was "quintessentially a jury matter").

Wilson makes two arguments in support of his contention that the record blatantly contradicts the district court's conclusion that a jury could find Bridges did not point a gun at Wilson. Aplt. Op. Br. at 30–35. We conclude that neither argument has merit.

First, Wilson refers to his expert's testimony that the paths of the two bullets that entered Bridges's body indicate Bridges had his right arm raised. Id. at 32–33. But that testimony only provides the positioning of Bridges's arm at the time the bullets entered his body. It does not establish whether Bridges was inside or outside of his home at the time, and thus whether Wilson could see Bridges and perceive him

8

as a threat.  Moreover, the expert's testimony does not indicate whether there was a gun in Bridges's right hand when the bullets struck him.

Second, Wilson argues Bridges must have been outside of his home at the time of the shooting—a factual dispute that the district court did not explicitly address. Wilson attempts to establish that Bridges was outside based on three pieces of evidence: (1) his expert's testimony that the paths of the bullet holes in the Bridges's front door show the door was closed throughout the shooting, (2) Janelle Bridges's testimony that she heard Shane Bridges open and close the front door, id. at 177, and (3) Janelle Bridges's testimony that she "stuck" her hands "out the door" to show she did not have a gun after she discovered her husband lying on the floor in the living room, Vol. II at 195.  According to Wilson, this evidence conclusively establishes that the front door was closed during the shooting, but became ajar thereafter. Further, Wilson argues the only explanation for the door being open after the shooting is that Shane Bridges was outside when Wilson shot Bridges, forcing Bridges to retreat into the house and leave the door ajar behind him.

But the evidence that Wilson cites does not directly contradict the district court's factual recitation for two reasons.  First, Wilson mischaracterizes Janelle Bridges's testimony.  She actually testified that she "heard [Shane Bridges] open the door[,] . . . heard him shut the door and walk back around the couch[,] and then . . . heard gunshots."  Id. at 177; see also id. at 185 ("He opens the door, he sees there's a car, he shuts it and walks back.").  This testimony undermines Wilson's argument that Shane Bridges had to be outside at the time of the shooting.  Further, Janelle

9

Bridges's testimony about sticking her hands out of the door was that she "ran to the door and . . . put [her] hands up." Id. at 194. She did not explicitly testify about whether the door was open or closed at the time. This inconclusive testimony does not blatantly contradict the district court's account, which did not address whether Shane Bridges was inside or outside during the shooting or whether the door was open following the shooting.

Also, the inferences that Wilson draws from the three pieces of evidence ignore the estate's evidence about the shooting. The estate's investigator identified thirteen bullet holes outside of the Bridges's house—three in Janelle Bridges's vehicle, three north of the front door, two south of the front door, and five in the front door. Vol. VII, at 1019–38; see also Vol. VI, at 826–30. And the coroner recovered two bullets from Shane Bridges's body. The estate argues that, logically, unless two of the bullet holes predated January 1, 2014, the bullets that entered and killed Bridges had to have traveled through the house or front door before hitting him. Thus, the estate argues there is evidence that Bridges was inside the house when he was shot, and not outside pointing a gun at Wilson. At the very least, the estate's evidence counters the testimony that Wilson cites, and demonstrates that the record does not blatantly contradict the district court's factual recitation.

Finally, we conclude the district court sufficiently articulated its reasoning for finding that there was a genuine issue of material fact as to whether Bridges raised or fired a gun at Wilson. In support of its determination that a jury could find that Bridges never fired a shot at Wilson, the district court cited Janelle Bridges's and

10

Rex Dale Cowen's testimony that it sounded as if shots were coming from only one gun. And the district court noted that Wilson's testimony was the only evidence to support a finding that Bridges may have raised a gun and pointed it at Wilson. Since a jury could discount Wilson's credibility—in part, because there was "circumstantial evidence" that could discredit Wilson's version of the events—the district court concluded there were genuine issues of material fact. D. Ct. Order at 4–6. The district court's ruling sufficiently identified the basis for concluding that genuine issues of material fact remained. Cf. Roosevelt-Hennix, 717 F.3d at 753–54 (holding the district court's explanation was insufficient). Thus, we need not conduct our own review of the record to determine whether there was support for the district court's conclusion.

## III

Because this appeal focuses on second-guessing the district court's ruling regarding the sufficiency of the evidence, and because the district court's reasoning was sufficiently articulated and is not blatantly contradicted by the record, we conclude that we lack jurisdiction and dismiss this appeal.

Entered for the Court


Mary Beck Briscoe
Circuit Judge


11